JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams Street, Suite 201
Phoenix, Arizona  85007
Telephone:  (602) 382-2700
Facsimile: (602) 382-2800

DEBORAH L. WILLIAMS
Asst. Federal Public Defender
State Bar # 010537
Attorney for Defendant
deborah_williams@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR-09-712-PHX-DGC |
|---|---|
| Plaintiff, | |
| vs. | **MOTION TO SUPPRESS FOR VIOLATION OF MIRANDA** |
| Dennis Mahon, | |
| Defendant. | (Evidentiary Hearing and Oral Argument Requested) |

Dennis Mahon, through undersigned counsel, respectfully requests that this Court suppress all statements made to law enforcement on June 25, 2009, as involuntary and obtained in violation of *Miranda v. Arizona*, 834 U.S. 436 (1966) and subsequent case law.  This motion is based on the Fifth Amendment to the U.S. Constitution and *Miranda v. Arizona* and its progeny, as well as the attached Memorandum of Points and Authorities, any attached exhibits, and other documents in the Court's file on this matter, herein incorporated by  reference.

Respectfully submitted: August 12, 2010.

JON M. SANDS
Federal Public Defender

 s/ *Deborah L. Williams*
DEBORAH L. WILLIAMS
Asst. Federal Public Defender

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Facts

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "BATF"), along with state and local police, raided the Mahon's family farm in Rockford, Illinois on June 25, 2009.  His elderly parents–including a mother suffering from advanced Alzheimer's disease–were inside the house.  After being arrested and handcuffed, Mr. Mahon was advised of his rights under *Miranda v. Arizona*.  384 U.S. 436, 444 (1966).  He invoked his constitutional rights by saying:  "The small talk is over.  I can't say anymore." *See Exhibit 1 [E-227] at 9:35-10:00.*

Sometime later, BATF Special Agent Tristan Moreland ("SA Moreland") advised Mr. Mahon of the charges that had been filed against him in Arizona.  During that advisement, SA Moreland claimed that Mr. Mahon had not invoked and he went to great lengths to get Mr. Mahon talking. *See Exhibit 2 [E-224]* .  Mr. Mahon stated at least twice that he did not wish to speak with law enforcement without the assistance of an attorney.  First he said "I'm not going to say anymore.  I'd have to have an attorney."  Exhibit 2 at 7:00-7:05.  Then, when SA Moreland continued to pursue a discussion, Mr. Mahon said "OK, that's why I'm going to stay with an attorney.  Exhibit 2 at 8:25-8:30.  Each time, SA Moreland acknowledged the request and then continued to engage Mr. Mahon.  Getting nothing, he confronted Mr. Mahon with the untrue accusation that "I got you cold.  We got DNA.  I realize you guys are twins we got to deal with that issue.  One of you pushed your finger into the switch in the glue.  Some little fucking piece of shit got in there somehow, probably off the glove I don't know.  We spent $100,000 to pull the DNA." *See Exhibit 2 at 2:25-2:45.*

Afterwards, both Mahon brothers were placed in a van for transport to the Rockford, Illinois jail.  The van was wired for sound and video, and both recording systems were activated to record their words and actions.  It was hot, and space in the

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

backseat where both Mahon brothers were placed, was scarce.  Both of the brothers both stated that they were in great discomfort because of the heat and because of their need to use the bathroom.  They also commented several times on their concern for their elderly parents, and in particular their mother, and Dennis Mahon also made the agents aware of his diabetes and his need for medication.  While he was locked inside the oppressive conditions in the van, various law enforcement officials engaged Mr. Mahon in conversation despite his repeated requests for a lawyer.

**II.    Argument**

       **A.    Police interrogation should have ceased once Mr. Mahon invoked his rights under *Miranda*.**

When a person is questioned while in custody, there are "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he does not otherwise do so freely." *Miranda v. Arizona*, 384 U.S. at 467; *Dickerson v. United States*, 530 U.S. 428, 435 (2000) ("the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not" exercise his right against self-incrimination).  Given these pressures, and the Fifth and Fourteenth Amendment's prohibition of compelled self-incrimination, the United States Supreme Court has held that law enforcement must advise a person of his right to remain silent and to have an attorney if the accused is in custody and is subject to interrogation by law enforcement. *See Miranda*, 384 U.S. at 444, 467.  If an in-custody suspect invokes his right to remain silent or asks for a lawyer, law enforcement may not take any actions or speak any words "reasonably likely to elicit an incriminating response" must cease. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *Miranda*, 384 U.S. at 473-74 ("If the individual indicates in any manner, at any time prior or during questioning that he wishes to remain silent, the interrogation must cease.").  To reiterate, any law enforcement activity that could

cause a defendant to incriminate himself may be deemed interrogation. *United States v. Orso*, 266 F.3d 1030, 1033-34 (9th Cir. 2001) (officer's lengthy discussion with defendant about the evidence against her was the functional equivalent of interrogation), *abrogated on other grounds by Missouri v. Seibert*, 542 U.S. 600 (1994).

When Mr. Mahon was being questioned, his physical and mental distress was exacerbated by the knowledge that both of his elderly parents (one of whom was in the advanced stages of Alzheimer's) were inside the home as it was being raided by the heavily armed police and agents. After SA Moreland finally stopped asking questions, Mr. Mahon was locked inside the wired van and various BATF agents engaged him in conversation – a situation "reasonably likely to elicit an incriminating response." *See Innis*, 446 U.S. at 301 Exhibit 1; Exhibit 2. After asserting his rights under *Miranda*, he did not waive those rights. *See* Exhibit 1; Exhibit 2; *Miranda*, 384 U.S. at 444-45. On the contrary, he repeatedly said that he wanted to speak with an attorney and did not want to speak with law enforcement. *See* Exhibit 1; Exhibit 2. The agents should have ceased eliciting information from him as soon as he invoked. *See Miranda*, 384 U.S. at 444-45, 473-74. Despite his repeated invocations, and their constitutional obligation to honor his invocations, the agents continued to question him in a manner likely to elicit an incriminating response. *See* Exhibit 1; Exhibit 2; *Innis*, 446 U.S. at 301.

The agents created an environment that was the functional equivalent of interrogation when they confined Mr. Mahon inside a hot van and then, without his knowledge, recorded what he said. *See* Exhibit 3; *Orso*, 266 F.3d at 1033-34. The oppressive atmosphere within the van made it reasonably likely that Mr. Mahon would break down and make potentially incriminating statements. *Innis*, 446 U.S. at 301. Especially in light of the fact that he invoked before entering the van, this functional equivalent of interrogation should never have occurred. This Court should

4

suppress all statements made by Mr. Mahon after he invoked his *Miranda* rights.  *See Orso*, 266 F.3d at 1033-34.

### B.    Mr. Mahon's involuntary statements cannot be used against him at trial.

If law enforcement fails to provide a *Miranda* warning to an in-custody suspect, or fails to secure a knowing, intelligent or voluntary waiver of those rights, any statements made by the suspect should be deemed involuntary and inadmissible as evidence.  *See Miranda*, 384 U.S. at 444, 467; *United States v. Heldt*, 745 F.2d 1275, 1277-78 (9th Cir. 1984) (defendant who invoked right to silence and refused to sign a waiver before making incriminating statements had not waived his *Miranda* rights).  The Fifth Amendment protects a suspect/defendant from having involuntary statements used against him, and this protection is supported by sound policy reasons. An involuntary statement is inherently untrustworthy and its use violates a fundamental sense of decency.  *See Spano v. New York*, 360 U.S. 315, 320-21 (1959).

The voluntariness of a statement is based upon the totality of the circumstances, which may include whether statements were extracted through threats of violence, implied promises, or improper influence.  *See United States v. Bautista-Avila*, 6 F.3d 1360, 1364 (9th Cir. 1993).  Other important and relevant factors include the defendant's personal history, level of education, physical condition, and the circumstances under which the statements were elicited.  *See Crane v. Kentucky*, 476 U.S. 683, 691 (1986).

Here, the agents continued to speak to Mr. Mahon despite the fact that he had already invoked his rights to remain silent and to consult with a lawyer.  *See* Exhibit 1, Exhibit 2; *Edwards*, 451 U.S. at 482.  He was concerned about his elderly parents and how they would fare in the face of the officers' and agents' display of force, and that concern together with the afore-mentioned environment rendered him particularly susceptible to the pressure inherent in being questioned.  *See id.*; *Spano*, 360 U.S. at

5

320-21; *Crane*, 476 U.S. at 691.  His vulnerable state made it easier for the agents to exert improper influence as they entered the home and wielded control over both his elderly parents and their property.  *See id.*; *Spano*, 360 U.S. at 320-21; *Crane*, 476 U.S. at 691.  His statements to law enforcement were thus involuntary as a result of  law enforcement's substantial power over him and the fact that he invoked his constitutional rights.  *See id.*; *Spano*, 360 U.S. at 320-21; *Crane*, 476 U.S. at 691.

The hot and cramped conditions in the van, together with Mr. Mahon's ill health and his concern about his elderly parents, are strong evidence that his statements were involuntary and were made only after he was compelled to endure the functional equivalent of interrogation.  *See Crane*, 476 U.S. at 691; *Orso*, 266 F.3d 1030, 1033-34. Given the totality of the circumstances, Mr. Mahon's statements were involuntary and should be suppressed.

The government bears the burden of proving by a preponderance of the evidence that Mr. Mahon's statement was voluntary <u>and</u> that he knowingly and intelligently waived his *Miranda* rights.  *Colorado v. Connelly*, 479 U.S. 157, 168 (1986);  *United States v. Dodier*, 630 F.2d 232 (4th Cir. 1980).   They cannot do so in this case.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

III.    **Conclusion**

      Mr. Mahon, pursuant to *Miranda* and the Fifth Amendment of the United States Constitution, respectfully requests that this Court suppress his statements made on the day of his arrest.  He also asks for a voluntariness hearing, after which his statements should be ruled involuntary.

      Respectfully submitted: August 12, 2010.

                               JON M. SANDS
                               Federal Public Defender

                               *s/ Deborah L. Williams*
                               DEBORAH L. WILLIAMS
                               Asst. Federal Public Defender

I hereby certify that on August 12, 2010, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

**John Boyle/Michael Morrissey**
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central, Suite 1200
Phoenix, Arizona  85004-4408

**Barbara Hull**
637 N. Third Ave. #3
Phoenix, AZ 85003-0001
Attorney for Co-defendant Daniel Mahon

Copy mailed to:
**Dennis Mahon**
Defendant

  s/  *TG for S. B.*
S.B.