**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR 09-712- PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Dennis Mahon (1) <br> Daniel Mahon (2), | |
| Defendants. | |

Defendant Dennis Mahon moves to dismiss Counts 1 and 2 of the indictment on jurisdictional grounds (Doc. 395), dismiss Count 3 as duplicitous (Doc. 397), and strike 14 overt acts and various other references listed in Count 1 (Doc. 408). Defendant Daniel Mahon moves to dismiss Count 1 on jurisdictional and statute of limitations grounds related to the face of the indictment, and Defendant Dennis Mahon joins in the motion. Docs. 472, 567. The Court heard oral argument on September 22-23, 2010. For reasons stated below, the Court denies Defendants' motions with the exception of Defendant Dennis Mahon's motion to strike the word "terrorism" from the indictment.

**I.   Background.**

Count 1 of the superseding indictment charges Defendants with conspiracy to damage buildings and property by means of explosives in violation of 18 U.S.C. §§ 844(n) and 844(i). The Count reads as follows:

> On or about September 26, 2003 to on or about June 25, 2009, in the District of Arizona and elsewhere, defendants DENNIS MAHON and DANIEL MAHON and others known and unknown to the grand jury did knowingly and

> unlawfully combine, conspire, confederate and agree together to maliciously damage and destroy by means of fire and explosives, buildings and other real property used in interstate and foreign commerce and in activities affecting interstate and foreign commerce.

Doc. 476, at 1. Count 1 further explains that it "was part of the conspiracy that one or more of the conspirators build and deliver an explosive device to the City of Scottsdale Office of Diversity and Dialogue," "teach an individual how to build a package containing a pipe bomb," and "send to others training materials on the production of and use of explosives, techniques to avoid detection by law enforcement, and methods to commit terrorism." *Id.* at 2. Count 1 includes a list of 14 specific acts allegedly committed by Dennis or Daniel "[i]n furtherance of the conspiracy." *Id.* at 2-4. The indictment details which defendant allegedly committed each individual act, the approximate date of each act, and the nature and extent of each act. *Id.*

Count 2 of the superseding indictment charges Dennis Mahon with violating 18 U.S.C. §§ 844(i) and 2. The Count reads as follows:

> On or about February 26, 2004, in the District of Arizona, defendant DENNIS MAHON did maliciously damage by means of an explosive, a building and real property used in activity affecting interstate and foreign commerce and used [sic] interstate and foreign commerce, namely the City of Scottsdale, Office of Diversity and Dialogue located in Scottsdale, Arizona; that prohibited conduct resulted in personal injury to Donald Logan and Renita Linyard.
>
> In violation of Title 18, United States Code, Sections 844(i) and 2.

Doc. 476, at 5.

Count 3 charges Dennis Mahon with violating 18 U.S.C. § 842(p)(2)(A) by, *inter alia*, teaching and demonstrating how to make and use "an explosive and destructive device," and distributing information "pertaining to . . . the manufacture and use of an explosive and destructive device" with the intent that the above "be used for and in furtherance of an activity that constitutes a Federal crime of violence." Doc. 476, at 5. Count 3 lists specific activities in which the Defendant allegedly engaged, such as "[teaching] an individual how to blow-up a house using simple tools and a propane tank," teaching the person "how to construct a package pipe-bomb," and mailing the person two books. *Id.*

- 2 -

## II. Motion to Dismiss Counts 1 and 2 on Jurisdictional Grounds.

Defendant Dennis Mahon challenges Counts 1 and 2 on jurisdictional grounds. Doc. 395. Although the motion mentions Article I § 3 of the United States Constitution and federalism, Defendant's core argument is as follows: violation of § 844(i) requires a nexus to interstate commerce because the statute was passed under Congress's commerce power and the statute itself has a jurisdictional element whereby the property damaged must be used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. Defendant argues that this nexus cannot be shown under the present facts. Without such a nexus, Defendant argues, the federal government does not have jurisdiction to prosecute the case and this Court does not have jurisdiction to hear it. Defendant suggests that the Court, not the jury, must decide whether the property alleged in Counts 1 and 2 was sufficiently related to interstate commerce.

### A. Resolution of the Present Motion.

The jurisdictional requirement of interstate commerce in § 844(i), and the allegation of an effect on such commerce in the indictment, are sufficient to confer subject matter jurisdiction on this Court to try the charge, but the prosecution ultimately must prove the existence of this element like any other material element of the offense. *United States v. Gomez*, 87 F.3d 1093, 1096-97 (9th Cir. 1996); *accord United States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004) ("the interstate commerce nexus is an element that must be proved at trial" (internal quotations and citation omitted)). The proper way for Defendant to challenge the sufficiency of the government's evidence on this jurisdictional element is not through a pretrial motion to dismiss, but by a motion for judgment of acquittal at the close of the government's case-in-chief. *United States v. Morgan*, 238 F.3d 1180, 1186 (9th Cir. 2001); *United States v. Nukida*, 8 F.3d 665, 670-73 (9th Cir. 1993). Accordingly, the Court will deny Defendant's motion to dismiss.

### B. Legal Standard for Interstate Commerce Nexus.

The issue of what constitutes a sufficient interstate commerce nexus for purposes of § 844(i) will arise again at trial. The Court provides the following guidance.

Federal criminal liability attaches under § 844(i) if either of the following is true: (1) the property damaged is "used in commerce," or (2) the property damaged is "used . . . in an activity affecting commerce." *Jones v. United States*, 529 U.S. 848, 859 (2000). The Ninth Circuit has clarified the *Jones* factors as being: (1) whether the "function of the building" is "of a commercial or economic character," and (2) whether the activity in which the building is used "affects interstate commerce," regardless of whether the building's function is commercial. *United States v. Lamont*, 330 F.3d 1249, 1252-54 (9th Cir. 2003).

### 1.     Used in Commerce.

A property is used in commerce when the "function of the building" is "of a commercial or economic character." *Lamont*, 330 F.3d at 1252-54. An owner-occupied private residence is not deemed to be used in commerce. *Jones*, 529 U.S. at 855. Neither is a church building whose primary purpose is hosting religious services. *Lamont*, 330 F.3d at 1253. The *Lamont* court noted that while "[t]he destruction of a church building may have economic consequences, . . . this does not lead to the conclusion that a church is inherently commercial." *Id.* at 1255. The court further observed that a church's "solicitation of substantial amounts of funds that may be expended for national or even international proselytizing," even when such funds "may be transmitted to national or international parent bodies for such purposes," fails to qualify the church as a commercial or economic enterprise. *Id*. *Lamont* left open the issue of whether "megachurches [that] offer[] banking, shopping, barbershop, and fitness center services" are used in commerce. *Id*. at 1255.

### 2.     Used In Activity that Affects Interstate Commerce.

Buildings whose primary function is not commercial or economic, as well as buildings that are used in commerce, can also fall under § 844(i) if they are used "in an activity affecting commerce." *Jones*, 529 U.S. at 855 (noting that § 844(i) covers "'any building' . . . 'used' in an activity affecting commerce"); *accord United States v. Laton*, 352 F.3d 286, 292 (6th Cir. 2003) (noting that "[o]n its face, § 844(i) does not distinguish between the arson of traditional for-profit business property, nonprofit organizations' structures and equipment, or state and local government buildings and supplies"). The term "used in an activity" in this

- 4 -

1 context means "active employment for commercial purposes, and not merely a passive, 2 passing, or past connection to commerce." *Lamont*, 330 F.3d at 1256 (quoting *Jones*, 529 3 U.S. at 855). The *Lamont* court expressly declined to consider facts "in the aggregate" when 4 making the determination of whether an activity affects interstate commerce, deeming 5 aggregation in the case of a non-commercial building to be foreclosed by *United States v.* 6 *Morrison*, 529 U.S. 598, 611 n.4 (2000). *Id*. at 1257 n.8.

7 An owner-occupied private residence is not deemed to be used in an activity affecting 8 commerce even if it is used to secure a mortgage issued by an out-of-state lender, uses 9 natural gas from out-of-state gas sources, and is insured by an out-of-state insurer. *Jones*, 10 529 U.S. at 855. Neither was the church in *Lamont* deemed to be used in an activity affecting 11 commerce, despite the fact that it purchased goods that originated from outside the state, 12 included out-of-state members, had funds transferred interstate, and received and distributed 13 publications that traveled interstate. *Lamont*, 330 F.3d at 1253. The *Lamont* court found that 14 the effect of each "use" on interstate commerce was too attenuated. *See id*. By contrast, 15 "rental of real estate" is an activity that affects interstate commerce, and using an apartment 16 building in such activity brings the apartment building within the purview of § 844(i). *Jones*, 17 529 U.S. at 856 (quoting *Russell v. United States*, 471 U.S. 858, 862 (1985)).

18 The prosecution would have this Court use the more inclusive standard declared by 19 the Sixth Circuit in *Laton*, arguing that "[a] single relationship or a combination of several 20 different ties to interstate commercial activity can support a finding that a building was 21 actively employed in commerce." Doc. 418, at 3. If this is meant to imply that *Wickard*-22 style aggregation can be used when assessing effects on interstate commerce, *Wickard v.* 23 *Filburn*, 317 U.S. 111 (1942), such a proposition frames the law of this circuit too broadly. 24 The Ninth Circuit expressly rejected aggregation as a means of establishing an effect on 25 interstate commerce for purposes of § 844(i) where the building itself was not used in 26 commerce. *Lamont*, 330 F.3d at 1257 n.8. *Laton* recognized that circuits differ in their *Jones* 27 analysis, and expressly listed *Lamont* as a decision that appeared different in some respects 28 from its own. *Laton*, 352 F.3d at 299 n.12. Finally, *Laton* did not actually aggregate.

1  Instead, the court framed its position as follows: "When the government relies on *other*
2  connections to interstate commerce to establish the jurisdictional element of § 844(i), the
3  purchase of supplies from out of state can offer *additional* support for the conclusion that a
4  building or property is used in an activity affecting interstate commerce." *Id.* at 300
5  (emphasis added). Later in its opinion the court reiterated this by stating: "Any of these last
6  three factors [(i.e., putting out fires to commercial buildings, putting out fires on an interstate
7  highway, and lowering insurance rates in the city)] by itself demonstrates sufficiently that
8  [the fire-station building] was used in an activity that affected interstate commerce." *Id.* at
9  302.

### 3.  This Case.

In this case, the government will be required to show either that the Scottsdale building was of a commercial or economic character, or, without aggregation, that it was used in an activity affecting interstate commerce. Evidence that the building was used to promote events and activities that themselves affected interstate commerce may be sufficient for the latter purpose.

## III.  Motion to Dismiss Count 3 as Duplicitous.

Defendant Dennis Mahon moves to dismiss Count 3 on grounds that it combines multiple offenses and is duplicitous. Doc. 397. The crux of the argument is that conviction under a duplicitous count would violate Defendant's Constitutional and statutory rights because the Defendant would not clearly know the charges he faces, in violation of the Fifth Amendment, and the Defendant may be found guilty on the count indicted even if the jury was not unanimous as to which offenses the Defendant committed under the count, in violation of the Sixth Amendment.

A threshold matter is whether 18 U.S.C. § 842(p)(2)(A) contains one offense or several. To determine whether a statute defines multiple offenses, the Court considers multiple factors, including (a) the language of the statute, (b) the statutory context, including legislative history if applicable, (c) the nature of the prohibited conduct, and (d) whether it

1    is appropriate to assign separate punishment for each act charged. *United States v. UCO Oil
2    Co.*, 546 F.2d 833, 836-38 (9th Cir. 1976).

3        Section 842(p)(2)(A) makes it a crime for someone to:

> teach or demonstrate the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, with the intent that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence.

By its plain language, the statute contains one offense: the act of conveying information about destructive devices with the intent that the information be used in furtherance of a federal crime of violence. Unlike other duplicitous statutes that combine disparate conduct such as "impersonating an officer" and "soliciting money," *e.g., United States v. Leggett*, 312 F.2d 566, 568-69 (4th Cir. 1962), § 842(p)(2)(A) uses three terms – teaching, demonstrating, and distributing information – to refer to conduct of the same nature, namely the conveying of information. The "separate punishment" factor supports this conclusion, for it would not be appropriate to mete double punishment to a defendant who, in the same training session, both taught and demonstrated how to build a Molotov cocktail. Finally, nothing in the statute's context or legislative history suggests that it codifies multiple offenses. Therefore, the Court concludes that § 842(p)(2)(A) creates one offense.

    This conclusion does not end the inquiry. The Court still must determine whether combining multiple acts in the same count prejudices Defendant's Sixth Amendment rights. The Court concludes that such rights will not be violated because the requirement of jury unanimity can be made clear through appropriate jury instructions. *See United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir. 1983) ("[w]e have noted approval of instructions which advise jurors that unanimity is required as to one specific part of a multi-part indictment count, those cases being ones in which discrete acts are alleged in a single count, such as charges of separate false statements, any one of which is sufficient to convict"). The Court will leave it to Defendants to propose such instructions. The Court will not dismiss Count 3.

**IV.     Motion to Strike Overt Acts and Other References from Count 1.**

Defendant Dennis Mahon moves to strike two sets of information from Count 1: the 14 overt acts that the prosecution alleges were performed in furtherance of the conspiracy, and references to "promoting racial discord," "White Aryan Resistance," and "terrorism." Doc. 408. Defendant argues that the foregoing are prejudicial surplusage. The Court agrees in part and disagrees in part, as discussed below. Defendant Daniel Mahon joined the motion during oral argument on September 23, 2010. Therefore, the Court's decision applies to both Defendants.

Rule 7(d) of the Federal Rules of Criminal Procedure permits a court to strike prejudicial or inflammatory surplusage from an indictment. Fed. R. Crim. P. 7(d); *see United States v. Ramirez*, 710 F.2d 535, 544-45 (9th Cir. 1983). Surplusage in the Rule 7(d) context is language that "goes beyond alleging elements of the crime," *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986), and can include "allegations that are neither relevant nor material to the charges," *Ramirez*, 710 F.2d at 544-45. A defendant is prejudiced by surplusage in the indictment if it prevents him from preparing a defense, causes him to be "prosecuted on the basis of facts [different from those] presented to the grand jury," prevents him from pleading double jeopardy should there be a future prosecution, or fails to "inform the court of the facts alleged so that it can determine the sufficiency of the charge." *See Jenkins*, 785 F.2d at 1392.

The 14 overt acts may or may not be surplusage, depending on whether 18 U.S.C. § 844(n) requires an overt act in furtherance of the conspiracy as an element of the crime. Even if surplusage were assumed, however, the allegations are neither prejudicial nor inflammatory. Defendant has not shown that the allegations fail to allow him to prepare a defense or cause other prejudice. The government has stated its intent to prove each of the overt acts at trial. And Defendant retains the option to request a limiting jury instruction to address any lingering concerns with the text of the 14 overt acts. *See Ramirez*, 710 F.2d at 545 (permitting instruction that indictment is not evidence and affords no inference of guilt or innocence). Therefore, the Court will not strike references to the overt acts.

1    With regard to the phrases "promote racial discord," "White Aryan Resistance," and "terrorism" in Count 1, the Court will strike only the term "terrorism." The terms "White Aryan Resistance" and "promote racial discord" are relevant to the charges insofar as they seek to show the Defendants' alleged motive, and the prosecution plans to prove that motive at trial. The term "terrorism" is different. In this post 9-11 era, "terrorism" denotes a specific kind of international violence associated with radical groups that have attacked and attempted to attack the United States. The government does not allege that Defendants have been involved with such groups. As the Ninth Circuit recently observed in *United States v. Waters*, __ F.3d ___, 2010 WL 3565259 at *11 (9th Cir. 2010), certain inflammatory language may impermissibly "encourage [a jury] to convict because it believe[s] [defendant holds] loathsome views that threaten[] the jurors' way of life." At oral argument on September 23, 2010, the prosecution offered to redraft the phrase as "domestic terrorism." Such a phrase – which was included in the original indictment in this case – comports with the government's allegation that Defendants sought to use violence to promote racial discord and attack government facilities. It also separates the conduct alleged in the indictment from the international terrorism that tends to evoke strong emotional responses from many Americans. The Court therefore agrees that the addition of the word "domestic" before the word "terrorism" would avoid prejudice to Defendants and would describe the government's allegations in this case more accurately.

Notwithstanding the government's willingness to amend the indictment, "the settled rule in the federal courts [is] that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form," *Russell v. United States*, 369 U.S. 749, 770 (1962), or the change is a correction to a typographical error, *United States v. Dawson*, 516 F.2d 796, 801 (9th Cir. 1975), *cert. denied*, 423 U.S. 855 (1975). The government may seek a superseding indictment to add the phrase "domestic terrorism,"or file a motion to amend the indictment if it contends such a change can be made by amendment.

## V. Motion to Dismiss Count 1 on Jurisdictional and Other Grounds.

### A. Jurisdictional Argument.

Defendants move to dismiss Count 1 – the conspiracy charge – because 18 U.S.C. § 844(n) does not proscribe the type of conduct alleged in the indictment, thereby precluding federal jurisdiction over the charge. Docs. 472, 567. Because Defendants challenge the facial sufficiency of the indictment, this is not a factual matter and the Court may decide it as a matter of law.

Section 844(n) reads in part: "a person who conspires to commit any offense defined in [§§ 841-48] shall be subject to the same penalties . . . as the penalties prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 844(n). A count in an indictment must charge the offense in such a manner that a defendant knows what he is accused of doing and may prepare an adequate defense. *See United States v. Adamson*, 291 F.3d 606, 616 (9th Cir. 2002).

Count 1 alleges that Defendants "did knowingly and unlawfully combine, conspire, confederate and agree together to maliciously damage and destroy by means of fire and explosives, buildings and other real property used in interstate and foreign commerce and in activities affecting interstate and foreign commerce." Doc. 476, at 1. The indictment also states the following, under a heading entitled "Object of the Conspiracy":

> The object of the conspiracy was to promote racial discord on behalf of the 'White Aryan Resistance' (WAR) by damaging and destroying buildings, facilities and real property of both the government and businesses whose activities defendants believed conflicted with their goals. Defendants also conspired to teach the tactics of terrorism with the intent that others commit violent acts on behalf of WAR.

*Id.* at 2. Defendants argue that "promoting racial discord" and "teaching others how to commit a crime" are not offenses under 18 U.S.C. § 844(i). Doc. 472, at 4. Defendants argue that because § 844(n) only prescribes penalties for "[an] offense the commission of which was the object of the conspiracy," and because the "object of the conspiracy" stated in the indictment was "to promote racial discord" and "teach the tactics of terrorism," which

- 10 -

are not offenses defined in §§ 841-48, such objects cannot come within the prohibition of § 844(n) even if they are proved beyond a reasonable doubt.

Defendants misinterpret § 844(n). The first part of § 844(n) states that "a person who conspires to commit any offense defined in [§§ 841-48] shall be subject to . . . ." Here, Count 1 of the indictment alleges that the Defendants "did knowingly and unlawfully . . . conspire . . . to maliciously damage and destroy . . . buildings and other real property," which is an offense under § 844(i). Therefore, the charge is that Defendants conspired to violate § 844(i). The second part of § 844(n) states, in essence, that a defendant who conspires to violate § 844(i) is subject to the same penalties as the penalties for violating § 844(i).

Defendants note that the Count 1 subsection entitled "Object of the Conspiracy" states that "[t]he *object of the conspiracy* was to promote racial discord on behalf of the 'White Aryan Resistance' (WAR) by damaging and destroying buildings, facilities and real property." Doc. 476, at 2 (emphasis added). While perhaps phrased somewhat awkwardly, the language of this subsection – especially when read in the context of Count 1's charging paragraph – does not so obfuscate the charge that Defendants conspired to damage and destroy property that it fails to provide Defendants with sufficient notice. *See United States v. Lo*, 231 F.3d 471, 481 (9th Cir. 2000) ("a conspiracy indictment need not allege the offense that is the object of the conspiracy with the same precision as would be necessary where that offense is itself the crime charged"). Count 1 sufficiently informs Defendants of the prosecution's charges, the charges are offenses under federal law, and the Court therefore will not dismiss the count.

**B.    Fictitious Target Argument.**

Defendants argue that Count 1 fails in part because the "power grid" – one of the property structures that Defendants allegedly conspired to damage or destroy – was a non-existent property. The prosecution counters by pointing out that a conspiracy to damage a fictitious object does not relieve a defendant of liability because "impossibility is not a defense to a conspiracy charge." *See*, *e.g.*, *United States v. Recio*, 270 F.3d 845, 848 (9th Cir. 2001).

- 11 -

Defendants' argument fails for several reasons. First, Defendants assert that the "power grid" mentioned in the indictment is non-existent, but the government has not made that concession. Counsel for the government clarified at the hearing on July 7, 2010, that the government does not intend to prove that Defendants conspired to attack a particular part of the Arizona-Texas power grid. Doc. 507, at 18-20. Counsel did not concede that the power grid did not exist. *Id.* Second, Defendants have cited no authority holding that a conspiracy indictment is facially valid only if it identifies the precise property to be attacked. Third, Defendants' motion is based on jurisdiction and notice. Doc. 472, at 3. Defendants have provided no authority for the jurisdictional deficiency of the conspiracy indictment and cannot claim to be lacking notice. The nature of the government's power grid claim was sufficiently clarified at the hearing on July 7, 2010. *See* Doc. 507, at 18-20.

### C.     Statute of Limitations Argument.

Defendants move to dismiss Count 1 due to expiration of the statute of limitations. They argue, albeit indirectly, that the statute of limitations for the alleged conspiracy to damage or destroy the Scottsdale office expired before the indictment was issued. This argument misconstrues the law. A co-conspirator is criminally liable if at least some part of the conspiracy occurred in the five-year period before the indictment. *Caywood v. United States*, 232 F.2d 220, 228-29 (9th Cir. 1956). Moreover, "[a] defense of the running of the Statute of Limitations is properly submitted to the jury as a question of fact in a conspiracy case." *Id.* at 229. Because at least some of the conspiratorial acts alleged in Count 1 occurred within five-years of the indictment, the indictment is facially sufficient and any issue of whether the statute of limitations has expired should be resolved by the jury at trial.

**IT IS ORDERED:**

1. Defendants' motions presented in Docs. 395, 397, 472, and 567 are **denied**.
2. Defendants' motion in Doc. 408 is **denied in part** and **granted in part** as set forth in this opinion.

1 Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to commence on
2 July 1, 2010 for a total of 91 days.
3 DATED this 29th day of September, 2010.

_____
David G. Campbell
United States District Judge