**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Dennis Mahon, Daniel Mahon,<br><br>Defendants. | No. CR09-712-PHX-DGC<br><br>**ORDER** |

The government has filed a motion in limine "to preclude at trial the admission and discussion of any polygraph results and testing, and any expert testimony regarding polygraphs administered in this case." Doc. 961. Defendant Dennis Mahon has filed a response (Doc. 1004), Defendant Daniel Mahon has joined the response (Doc. 1011), and the government has filed a reply (Doc. 1033). For reasons that follow, the Court will grant the motion.

Defendants argue that polygraph evidence related to two City of Scottsdale employees, Steven S. Anderson and Glen Olson, should be admitted to highlight the inadequacy of the criminal investigation in this case. Doc. 1004 at 2. Defendants seek to introduce as evidence an unsigned examiner's report concerning City of Scottsdale employee Steven Anderson's polygraph results. The report states that "no opinion can be rendered with regard to this polygraph examination due to incorrect question formulation." Doc. 1004-1. The report also recommends that additional testing be conducted. *Id.* Defendants assert that the criminal investigation was inadequate because no follow-up polygraph was administered to Anderson. Doc. 1004 at 2. Defendants also

argue that another examiner's report regarding City of Scottsdale employee Glen Olson's refusal to take a polygraph examination should be admitted to show the inadequacy of the investigation. Doc. 1004-2. Daniel Mahon also seeks to introduce a polygraph expert to testify about errors in the administration of some polygraphs in this case. Doc. 1004 at 3.

The government's reply attaches a signed examiner's report stating that "the physiological responses on the polygraph charts of Steven Anderson were not indicative of deception." Doc. 1033-1. The government argues that Defendants want to introduce the polygraph results to present jurors with a question of whether Steven Anderson passed a polygraph exam, and that this evidence should not be admitted. Doc. 1033 at 2. The government also contends that Glen Olson's refusal to submit to a polygraph is irrelevant. Doc. 1033 at 2. Lastly, the government argues that the testimony of Defendant Daniel Mahon's polygraph expert should be precluded because the government is not introducing polygraph results and impeachment of those results is therefore irrelevant. Doc. 1033 at 3.

**I.  Analysis.**

In *United States v. Cordoba*, the Ninth Circuit eliminated the *per se* rule excluding the admission of polygraph evidence, but expressed no "new enthusiasm for admission of unstipulated polygraph evidence" and noted that "polygraph evidence has grave potential for interfering with the deliberative process." 104 F.3d 225, 228 (9th Cir. 1997). After *Cordoba*, "district courts are free to reject the admission of polygraph evidence on the basis of any applicable rule of evidence without analyzing all other potential bases for exclusion." *United States v. Benavidez-Benavidez*, 217 F.3d 720, 724 (9th Cir. 2000).

"[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay [and] waste of time[.]" Fed. R. Evid. 403. The Court finds that the dangers of unfair prejudice, misleading the jury, and waste of time substantially outweigh the minimal probative value of the polygraph evidence in this case.

### A. Steven Anderson's Polygraph.

Defendants seek to introduce polygraph evidence to show the inadequate nature of the criminal investigation. Doc. 1004 at 2. Mr. Anderson initially was deemed truthful when he responded during a polygraph exam that he had nothing to do with the bombing at issue in this case. Doc. 1033-1. The government asserts that a year later, during routine review by another examiner, Mr. Anderson's test results were found to be inconclusive because of improperly formulated questions. Doc. 1004-1 at 2. The government appears to be mistaken in its assertion that the routine review was conducted by another examiner; the second report appears to have been written by the same examiner as the first report. *Id.* In any event, Defendants apparently wish to contend that the government's investigation was inadequate because Mr. Anderson was not given a second polygraph exam after the first results were deemed invalid.

The Court finds that such evidence would present a clear risk of unfair prejudice, misleading of the jury, and undue waste of time. Defendants will argue for many reasons that the investigation performed by the government was inadequate. Giving Mr. Anderson a second polygraph exam is only one step in many the government could have taken. But a second-polygraph step can assume particular importance in this case only if polygraph exams are considered particularly probative, a view that has not been accepted by the courts. Because jurors generally may not be familiar with the unreliability of such tests, they may unfairly conclude that failure to administer a second test to Mr. Anderson was a far greater flaw in the government's investigation than in fact is the case when one understands that polygraphs can be quite unreliable. Stated differently, the probative value of the government's failure to administer a second polygraph test to Mr. Anderson becomes more important in the eyes of the jurors to the extent polygraphs are viewed as a reliable method of obtaining truthful information. If the evidence were to be admitted, not only would there be a risk that jurors would unfairly judge the reasonableness of the government's investigation because they overestimate the value of polygraphs in

discovering the truth, but there also would likely be considerable time spent during trial debating the reliability of polygraphs as an investigative tool – side litigation that would result in an undue waste of time in this already complicated case.

**B.     Glen Olson's Polygraph Refusal.**

The Court reaches a similar conclusion with respect to the refusal by Glen Olson, a friend and former supervisor of a person of interest in this investigation, to submit to a polygraph. Doc. 1004-2. Jurors unfamiliar with polygraph reliability may assume that a person's refusal to take a polygraph must be based on that person's guilty knowledge, rather than other legitimate reasons for refusing. Jurors might unfairly conclude that Olson's refusal was a much more significant event in the investigation than in fact is the case when one appreciates the limited value of polygraphs. What is more, the government likely would be required to present evidence concerning the limited value of polygraph testing, evidence that would unduly delay the completion of this trial. Given the diversity and complexity of issues in this case, the Court cannot conclude that side litigation about the reliability of polygraph testing and the significance of a refusal to take such a test would be a productive use of time for the parties, the jury, or the Court.

**C.     Defendant Daniel Mahon's Polygraph Expert.**

Defendant Daniel Mahon has hired a polygraph expert and suggests that the expert will testify about errors committed during the government's administration of polygraphs in this case. Because the government does not intend to present the results of any polygraph test, such expert testimony will not be relevant for impeachment. The Court can identify only two other possible uses of such an expert at trial: to argue that a particular polygraph result was flawed and that the statements of the person tested were therefore either truthful or untruthful, or to argue that the government's investigation was flawed because its polygraph examinations were flawed. The first use of the expert clearly would raise Rule 403 issues because it would suggest to the jury that correctly administered polygraphs have a level of reliability that the courts have not recognized.

The second use would also be problematic because it would suggest that polygraphs have a value in law enforcement investigation that can only be accorded truly reliable investigative tools, something that polygraphs are not. As noted above, it also would result in side litigation concerning the reliability of polygraphs and their utility in a criminal investigation – side litigation that would unduly prolong the trial in this case.

**II.  Conclusion.**

The Court concludes that each of the proposed uses of polygraph evidence in this case presents a danger of unfair prejudice, misleading of the jury, and undue waste of time that substantially outweighs the probative value of the polygraph evidence. The evidence therefore will be precluded under Rule 403.

**IT IS ORDERED** that the government's motion in limine (Doc. 961) is **granted**. Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to commence on 4/29/2011 for a total of 105 days.

Dated this 11th day of August, 2011.

David G. Campbell
United States District Judge