**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR 09-712-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Dennis Mahon (1), Daniel Mahon (2), | |
| Defendants. | |

Defendant Dennis Mahon has filed a motion to dismiss based on destroyed exculpatory evidence. Doc. 1133. The motion has been fully briefed. Docs. 1143, 1154. The Court discussed the motion with counsel at a hearing on September 16, 2011. For the reasons that follow, the Court will deny Defendant's motion.

**I.  Background.**

The motion concerns DNA analysis conducted on components of the bomb at issue in this case. At the government's request, a private laboratory known as Orchid Cellmark analyzed a black plastic switch and a fingerprint on adhesive related to the switch for possible DNA. The laboratory found partial DNA from two unidentified males. The laboratory excluded Defendants Dennis and Daniel Mahon as possible contributors of the DNA. This information was produced by the government to Defendants in this case.

At the government's request, Orchid Cellmark also compared the partial DNA from the fingerprint and the switch to DNA from law enforcement officers and laboratory

personnel who had assisted in gathering and analyzing the evidence in this case. Orchid Cellmark identified Robert Moberley, a forensic chemist with the U.S. Postal Service's National Forensic Laboratory, as a possible contributor to the DNA mixture found on the switch. This information was also produced to Defendants.

Defendant notes that DNA analysis was conducted on five different occasions between April 22 and October 29, 2008. Defendant attaches reports from these five analyses to the motion. *See* Doc. 1133. Defendant argues that an attorney from the government authorized the complete consumption of the DNA samples. *Id.* at 2-3.

Although the DNA samples appear to be exculpatory because they exclude Dennis and Daniel Mahon as possible contributors to the DNA, Defendant argues that his rights were violated when the DNA was consumed in the testing because he is now unable to conduct his own analysis and counter the government's argument that the DNA may have been contributed by chemist Moberley. Because the DNA has been destroyed and has eliminated Defendant's ability to prepare this response to the government's argument, Defendant asks that the Court dismiss this case.

The government argues that the DNA analysis is exculpatory – Defendant was not denied the exculpatory results of the DNA testing. The government also argues that the DNA analysis was conducted by swabbing the fingerprint and switch, that the swab was consumed during the first test, and that Defendant has not attempted to swab these items to see if any DNA remains. Defendant requests an evidentiary hearing to determine whether the swab in fact was consumed during the first test.

**II. Analysis.**

The Court concludes that the evidence and case law cited by Defendant do not warrant dismissal of this action. The Court also concludes that Defendant has not made a showing sufficient to warrant an evidentiary hearing.

The exhibits attached to Defendant's motion show that the DNA analyses of the fingerprint and switch were conducted on April 22, 2008. A report with that date

indicates that the fingerprint and switch were received by the lab on December 17, 2007. Doc. 1133-1. The report explains that a partial DNA profile was obtained by swabbing the fingerprint and switch, not by some direct testing of these items. *Id*. The report further states that in the absence of specific instructions, the fingerprint and switch were to be returned to the submitting agency. Doc. 1133-1 at 3. Attached to the report is a ten-column table which identifies the DNA tests of the two items and the values obtained during the analyses. The analysis of the fingerprint is identified as FR07-0191-01.01.1 and the analysis of the switch is identified as FR07-0191-01.01.2. Doc. 1133-1 at 4.

A second report is dated June 28, 2008. Doc. 1133-2. It supplements the report dated April 22, 2008. *See* Doc. 1133-2 at 2. It continues to include the tests that were performed on April 22, 2008 on the fingerprint and switch (FR07-0191-01.01.1 and FR07-0191-01.01.2). It also includes the ten-column table for these two samples that was generated with the April 22, 2008 report. Doc. 1133-2 at 4. The report shows that additional DNA analyses were performed on several new items related to Defendants and other new individuals. The report shows that these items were received by the lab on June 9, 2008, as opposed to the fingerprint and switch which had been received on December 17, 2007. Doc. 1133-2 at 2. The report concludes that DNA on the new items does not match the partial DNA originally detected on the fingerprint and switch. The report specifically supplements the report dated April 22, 2008. *Id*.

A third report is dated October 24, 2008. It continues to reflect the partial DNA results originally received from analysis of the fingerprint and switch, and adds DNA test results from a number of new items received by the lab on September 15, 2008. The report concludes that DNA from these new items does not match the partial DNA originally detected on the fingerprint and switch. Doc. 1133-3 at 4-5.

A fourth report is dated October 29, 2008. The report amends the report dated October 24, 2008, to clarify that three individuals mentioned in the previous report were not suspects, but instead were elimination samples. Doc. 1133-4 at 4. The report

continues to contain the same ten-column results that were obtained from the fingerprint and switch in the original April 22, 2008 testing (FR07-0191-01.01.1 and FR07-0191-01.01.2). *Id.* at 6.

A final report is dated January 6, 2009. It includes testing of items received by the lab on November 21, 2008. Doc. 1133-5 at 4. It concludes that Robert Moberley, the chemist, is a possible contributor to the partial DNA found on the fingerprint. It excludes the DNA test results for all other individuals. Doc. 1133-5 at 6.

A review of the reports shows that DNA testing was conducted on the fingerprint and switch in April 22, 2008, and that DNA testing on additional items from Defendants and other individuals was conducted at later dates and included in subsequent reports. Nothing in the reports suggests that additional DNA analysis was conducted on the fingerprint and switch after April 22, 2008. Nor do the reports suggest that any portion of the swab used on the fingerprint and switch on April 22, 2008 was preserved – or could have been preserved – for later testing.

The reports do not support Defendant's assertion that DNA evidence was entirely consumed by the testing. Defendant has presented no evidence to show that swabbing of the fingerprint and switch consumed all DNA on the fingerprint and switch. Nor has Defendant presented evidence that the fingerprint and switch currently lack DNA, or that the swabs obtained on April 22, 2008 could have been preserved for current testing by Defendant.

Defendant asserts in the motion that complete destruction of the DNA sample was authorized by a prosecutor, but the document cited by in support of this assertion is a phone message log for the Arizona Department of Public Safety Crime Laboratory DNA Unit, not Orchid Cellmark. Doc. 1133-6 at 2. Moreover, the prosecutor's message is dated October 5, 2004 – more than three years before the analysis was conducted by Orchid Cellmark. The Court cannot conclude that the phone message relates to the testing conducted on April 22, 2008.

The government violates a defendant's due process rights if it destroys evidence that possesses apparent exculpatory value before the destruction. The evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 489 (1984).

Defendant has presented no basis upon which the Court can conclude that the exculpatory value of the swabs from the fingerprint and switch was apparent before the swabs were consumed in the April 22, 2008 testing. Rather, the exculpatory value of those swabs only became apparent when the testing was conducted and Defendant was excluded. That evidence was preserved and produced to Defendant in this case.

Defendant's complaint appears to be with the DNA analysis, conducted months later, that identified Robert Moberley as a possible donor of some of the DNA. This DNA analysis, however, was conducted on a buccal comb obtained from Mr. Moberley. *See* Doc. 1133-5 at 4. Certainly the exculpatory value of this DNA analysis was not apparent before the test was performed. Moreover, Defendant has not shown that he is unable to obtain comparable evidence – he has not asserted that he is unable to obtain a current DNA sample from Mr. Moberley.

Defendant notes that the destruction of DNA evidence with *potentially* exculpatory value violates a Defendant's due process rights if done in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Defendant does not meet this test. To the extent Defendant is concerned that the swab used on the fingerprint and switch in 2008 was potentially exculpatory, his concern is resolved by the fact that the swab became actually exculpatory – it excluded Defendant as possible donors of the DNA. Certainly the government and Orchid Cellmark could not have concluded in April of 2008 that the DNA analysis was potentially exculpatory because (a) it might exclude Defendants as donors of the DNA, (b) months later a different analysis might identify Robert Moberley

as a potential donor, and (c) the government therefore should preserve the swabs of the fingerprint and switch so that they could be analyzed further to exclude Mr. Moberley. The due process clause does not require that the government be clairvoyant. Moreover, Defendant has presented no evidence to suggest that the government acted in bad faith. The government has produced to Defendant exculpatory DNA evidence. No indication of bad faith can be found in these facts.

Finally, Defendant notes that the ABA Criminal Justice Section standards on DNA evidence suggest that before a test that entirely consumes DNA evidence is conducted, "the prosecutor should provide every defendant against whom an accusatorial instrument has been filed, or any suspect who has requested prior notice, an opportunity to object and move for an appropriate court order[.]" Doc. 1133 at 6. This standard, even if it had some controlling authority in this court, would not apply to the facts of this case. No "accusatorial instrument" had been filed against Dennis Mahon on April 22, 2008. Nor had Defendant requested notice before DNA evidence was consumed in testing.

### III. Conclusion.

Defendant has provided no basis for dismissal of the charges in this case, and no justification for an evidentiary hearing. The reports show that the swab analysis of the fingerprint and switch was completed in April of 2008 and that subsequent analyses were conducted to identify other possible contributors. Defendant has provided no basis for concluding that the exculpatory nature of the swabs was apparent or even potential before they were consumed, or that the government acted in bad faith.

**IT IS ORDERED** that Defendant Dennis Mahon's motion to dismiss based upon destroyed exculpatory evidence (Doc. 1133) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to commence on 8/12/2011 for a total of ____ days.

Dated this 23rd day of September, 2011.

_____
David G. Campbell
United States District Judge