WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR09-0712 PHX-DGC |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Dennis Mahon and Daniel Mahon, | |
| Defendants. | |

On January 18, 2012, Defendants moved for a mistrial. The motion was based on the fact that Exhibit 3, a tape recording of a conversation between Dennis Mahon and Tom Metzger, had been played to the jury. During the recorded conversation, Tom Metzger asserted that "lynchings" in the past were often justified. Defendants argued in their mistrial motion that the reference to lynchings was so prejudicial that a fair trial could not occur. After hearing arguments and considering the issue over the lunch hour, the Court disagreed. The Court did conclude, however, that the evidence containing the reference to lynchings should be stricken from the record and the jury should be instructed to disregard it. This order will explain in detail the Court's rationale.

**I.**

Defendants raised their concern about the references to lynchings several days before Exhibit 3 was admitted into evidence. On Friday, January 13, 2012, the Court heard arguments concerning the prejudicial nature of the references. Because the arguments were made in connection with the question of whether Exhibit 3 would be

admitted under Federal Rule of Evidence 801(d)(2)(E), and the Court had not resolved that issue, the admissibility of Exhibit 3 was deferred for later resolution.

The Rule 801(d)(2)(E) issue and Exhibit 3 were again discussed with counsel before trial on January 18, 2012. During this discussion, defense counsel argued that the references to lynchings should be accompanied by an instruction on the First Amendment right of free speech, but did not again raise their Rule 403 concerns. Unfortunately, the Court did not remember that the Rule 403 issue had been raised several days before with respect to Exhibit 3. Later in the day, when the government moved for admission of Exhibit 3, defense counsel objected on hearsay, First Amendment, and relevancy grounds, but again failed to raise the Rule 403 issue. The Court overruled the objections and Exhibit 3 was admitted and played for the jury. Defense counsel then moved for a mistrial based on the references to lynchings.

The Court heard arguments and considered the matter over the lunch hour. Following the lunch break, the Court concluded that the playing of Exhibit 3 and its references to lynchings was not so prejudicial as to require a mistrial. The Court did conclude, however, that the references should be excluded under Rule 403 and accordingly struck the evidence from the record and instructed the jury to disregard it.

**II.**

Defendants Dennis and Daniel Mahon are accused of conspiring to promote racial discord on behalf of the White Aryan Resistance – a white supremacist movement known by the acronym "WAR" – by damaging property and buildings through use of explosives. Doc. 476. Dennis Mahon is also charged with sending a pipe bomb to the African American director of the City of Scottsdale Office of Diversity and Dialogue, resulting in serious injuries to the director and another city employee, and of sending information about explosives to another person with the intent that the information be used in a federal crime of violence. *Id.*

Given the nature of this case, particularly the racial objective of the alleged conspiracy, the evidence at trial necessarily contains numerous offensive racial remarks

and epithets. Defendants are avowed racists. Dennis Mahon in particular is not reluctant to share his views. As part of the evidence, the jury has heard and will hear many profane and offensive references of racial minorities and many statements by Defendants advocating violence against minorities and those who would promote their interests. Indeed, Dennis Mahon's attorney told jurors during opening statements that they would become angry as a result of her client's openly hostile racism.

**III.**

Because of the unusually offensive nature of the evidence to be presented in this case, the Court and parties took extra precautions to select a jury that could hear and decide the case fairly. Each potential juror completed a lengthy questionnaire. Potential jurors were asked whether they, members of their families, or their close friends were racial minorities, belonged to any group based on race or ethnicity, or belonged to any racial-separatist group. Potential jurors were asked whether they had been exposed to persons who exhibited strong racial or ethnic prejudices and, if so, whether that exposure would affect their fairness in this case. Jurors were asked whether the subject matter of this lawsuit would make it difficult for them to act fairly and impartially. The Court allowed counsel to ask follow up questions on these and other parts of the questionnaire, and heard challenges for cause to any juror the parties felt could not participate fairly.

In its opening instructions, the Court told the jurors that they must decide the case solely on the evidence and the law before them and must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. The Court instructed the jurors that it might from time to time strike evidence from the record and instruct them to disregard that evidence. The Court told the jurors that they must disregard any evidence stricken from the record.

Because of the overtly racist nature of many of Defendants' statements, the Court gave the jury the following instruction before the first offensive recording was played.

> Ladies and gentlemen of the jury, we've reached the point in the case where the government intends to present to you certain recordings.

> Other recordings will be played during the course of the trial. This is an occasion to remind you of something I said in the preliminary instructions about your duties as jurors, which is to decide this case objectively, without passion or sympathies. Some of the evidence that you are about to hear includes some declarations of religious, political, or personal beliefs which some people may find distasteful, or which some people may disagree with.
>
> You need to keep an open mind about this case and perform your duties as jurors faithfully, regardless of any personal likes or dislikes, opinions, prejudices, or emotions. That is to say you must consider all of the evidence in this case, including this evidence, dispassionately and not allow your personal opinions, your personal beliefs, fears, sympathies, or biases to enter into your deliberations in any respect.

This instruction was proposed by the government and agreed to by Defendants. All parties also agreed on the point at which the instruction would be given – before the first recording of Dennis Mahon's racially offensive comments and advocacy of violence was played to the jury.

**IV.**

Exhibit 3 is a recording of a telephone conversation between Dennis Mahon and unindicted coconspirator Tom Metzger. The conversation was recorded by Metzger to be played on his WAR-related radio show. On the morning of January 18, 2012, the Court concluded that it would not admit Exhibit 3 under Rule 801(d)(2)(E) because it was not sufficiently in furtherance of the conspiracy to satisfy the requirements of the rule. As a result, the statements of Metzger during the call could not be considered for the truth of the matter asserted. The Court accordingly instructed the jury that they were to consider the comments of Tom Metzger – which included the references to lynchings – only for context to understand the interspersed comments of Dennis Mahon. The Court instructed the jury that they were not to consider the comments of Tom Metzger for the truth of the matters asserted.

As noted, Defendants did not raise the Rule 403 issue when the Court revisited the admissibility of Exhibit 3 on the morning of January 18, 2012, nor when the exhibit was

- 4 -

offered in evidence later that day.  As a result, the Court did not engaged in a Rule 403 balancing after it had concluded that Exhibit 3 would not be admitted under Rule 801(d)(2)(E).  When the Court did address this issue in response to the mistrial motion, it concluded that Metzger's references to lynchings had little or no probative value given the Court's instruction that his statements were to be considered only for context, and that the potentially prejudicial nature of the references clearly outweighed their minimal probative value.  As a result, the Court gave the jury the following corrective instruction after lunch on January 18, 2012:

> Members of the jury, I want to give you another instruction.  As you may recall, in my opening instructions I said that sometimes I may order that evidence be stricken from the record and that you disregard and ignore the evidence.  I also said that if I give such an order, you must not consider the evidence in deciding this case.  My opening instructions also identified certain things that are not evidence and that must not be considered when deciding this case.  Included in the list of things that are not evidence is anything that is stricken from the record.
>
> I am now going to order that evidence be stricken and give you an instruction to disregard that evidence.
>
> Exhibit 3 is a recording of a conversation between Dennis Mahon and Tom Metzger.  I instructed you to consider Mr. Metzger's statements only for context.  When Exhibit 3 was played, it included statements by Tom Metzger about past lynchings and how they may have been justified.  I am now ordering that these statements by Mr. Metzger be stricken from the record.  This case has nothing to do with lynchings.  It has nothing to do with any lynchings referred to by Mr. Metzger.  Defendants are not charged with being involved with lynchings in any way.  As a result, I am striking Mr. Metzger's statements about this topic from the record and I instruct you to disregard these statements and not to consider them in any way in this case.

After the Court had given this instruction, it asked the following question:  "Is there any member of the jury that feels you would be unable to follow this instruction?"  No member of the jury raised his or her hand.  The demeanor of the jurors during the instruction and in response to this question convinces the Court that the jurors understood

the instruction and will follow it.

At the end of this case, the Court will provide another instruction to the jury concerning what evidence they should consider in deciding this case. That instruction again will tell the jury that they must not consider evidence that has been stricken from the record. The Court will also instruct the jurors that their only task is to determine whether Defendants are guilty or not guilty of the charges in the indictment – that Defendants are not on trial for any conduct or offense not charged in the indictment.

**V.**

Given the nature of this case, the care exercised to select a jury that could try the case fairly in light of the numerous offensive references to race and violence in the evidence, the various instructions given and to be given by the Court, the Court's corrective instruction with respect to the lynchings references in Exhibit 3, the jurors' indication that they could follow the Court's corrective instruction, and the Court's judgment having observed the trial and heard all of the evidence and arguments, the Court is satisfied that the corrective instruction has eliminated any prejudice that resulted from the playing of Exhibit 3 in its original form. The Court therefore concluded, after due deliberation, that a mistrial was not warranted.

Dated this 25th day of January, 2012.

_____
David G. Campbell
United States District Judge