JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams Street, Suite 201
Phoenix, Arizona 85007
Telephone: (602) 382-2700

DEBORAH L. WILLIAMS, # 010537
MILAGROS A. CISNEROS, # 020410
Asst. Federal Public Defenders
Attorneys for Defendant
deborah_williams@fd.org
milagros_cisneros@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>Dennis Mahon,<br><br>  Defendant. | No. CR 09-0712-PHX-DGC<br><br>**OBJECTIONS TO PRESENTENCE REPORT**<br>**and**<br>**SENTENCING MEMORANDUM** |

Dennis Mahon, through undersigned counsel, hereby files his Objections to the Presentence Report, and Sentencing Memorandum. Mr. Mahon continues to maintain his innocence. However, solely for the purposes of discussing the sentencing guidelines, the defense must proceed as if the convictions were correct.

**I. Offense Conduct** (¶¶ 6, 11)

This section of the report was taken substantially from SA Tristan Moreland's wiretap affidavit, with small portions taken from an ROI and the allegations set forth in the indictment. The wiretap affidavit included many incorrect, unsubstantiated, and misleading statements, many of which were neither established nor even explored at trial and they should not be stated as "facts" in the presentence report.

For example, the presentence report (¶ 11) discusses a 30-minute "standoff" at the time of arrest. The so-called "standoff" consisted of the officers standing by and watching the Mahons walking in and out of the house for 30 minutes. *See ROI 307, ¶ 2, attached as Exhibit A.* (If this had been discussed at all during trial, which it was not, the defense believes that the officers/agents would have had to admit that one or both of the brothers was in fact going back and forth to the clothesline to hang laundry.) Afterwards, they were arrested "without incident." *See Ogle Co. Sheriff's Office Narrative Report, pg. 2, attached as Exhibit B.* Regarding the gun that was "found" in the kitchen during the search, at trial the jury watched a video clip showing the same gun hanging on the wall of the kitchen.

Another issue raised by the probation officer relates to the injuries suffered by Ms. Linyard (¶ 6). The defense raised the issue of medical records earlier in the case. The government claimed that they did not obtain the medical records. The defense was concerned, and remained concerned, that the extent of injuries could become important during the trial or sentencing and there would be nothing to corroborate the extent of injuries claimed by the victims. This has now become an issue. The discovery revealed only that a piece of shrapnel had lodged in Ms. Linyard's eye. Now, Ms. Linyard claims that the shrapnel has moved into her brain. This is an important distinction. The defense has not seen any medical record. Absent medical records to substantiate that claim, the statement should be stricken. If the probation officer has obtained medical records, they should be disclosed to the defense. *See Fed. R. Crim. Proc. 32; United States v. Baldrich,* 471 F.3d 1110 (9th Cir. 2006) (Rule 32 requires that all facts relevant to the defendant's sentence be provided to the defendant for adversarial testing).

**II. Base Offense Level (¶¶ 22, 28)**

    **A. Cross-reference**

        1. The probation officer assigns a cross reference to Chapter Two, Part A. Because this cross reference triggers a disproportionate effect upon the offense level, facts supporting the cross-reference must be found by clear and convincing evidence. *United States v. Pineda-Doval*, 614 F.3d 1019, 1041 (9th Cir. 2010) ("The preponderance of evidence standard is generally the appropriate standard for factual findings used for sentencing. However, the Ninth Circuit requires 'facts found in support of Guidelines enhancements that turn out to have a disproportionate impact on the ultimate sentence imposed to be established by clear and convincing evidence.'") (quoting *United States v. Staten*, 466 F.3d 708, 720 (9th Cir. 2006)).

        Here, under USSG §2K1.4, the base offense level would be a level 24. With a base offense level of 24, and even if all of the other enhancements under §§ 2A2.1(b)(1)(A) and 3A1.2(b) were accepted, the guideline sentence would be 210-262 months. However, as calculated, application of the cross reference increases the <u>base</u> offense level to level 33. The sentence recommended by probation, based on the cross reference, is 100 years (1200 months). This is an extremely disproportionate impact.

        2. Even if a cross reference is correct, and regardless of whether clear and convincing evidence is required, the applied cross-reference is not supported by the evidence. The evidence does not establish that the bombing was done with the intent to cause death or serious bodily injury. Quite the opposite is true.

3

Assuming solely for the Guideline calculations that Dennis Mahon was the bomber, his stated intention was to send a political message[1]. It was not to cause death or serious bodily injury. The note demanded that the recipient "cease and desist" corrupt activities. (There would be no point in enclosing a warning note with a bomb if the intended recipient was supposed to be dead.) Dennis Mahon told the paid informant, Rebecca Williams, that "They listened to me, because if they had a two-inch pipe bomb this long. . .it would have killed the bastard . . . But they used the small you know five-inch by one-inch just to blow up his face a little bit and his fingers" (emphasis added). He also told Williams that his intention was "to teach the motherfucker a lesson the first time." Assuming for the sake of this argument that Dennis Mahon was the bomber, these comments together with the note suggest that his intention was to send a political message and secure a political result, and not to cause death or serious bodily injury. Without question the conduct knowingly created a substantial risk of death or serious bodily injury, but that is the standard for a Base Offense Level of 24 pursuant to §2K1.4(a)(1) rather than an inflated Base Offense Level under §2A2.1 as applied by the probation officer.

3. Assuming that a cross-reference applies, the cross-reference to § 2A2.1 is unsupported for the reasons stated above. Even if the court does not agree that Dennis Mahon's sole intent was to send a political message, at worst his intent would have been to create serious bodily injury. There is no evidence that he had the specific intent to kill anyone. Accordingly, the highest level of appropriate cross-reference in Chapter Two Part A would be § 2A2.2, Aggravated Assault. Adding adjustments for planning (2

---

[1] Interestingly, in a similar case filed in the Eastern District of Michigan, the district court dismissed on Rule 29 motion the conspiracy and other charges for reasons including but not limited to First Amendment concerns. *See attached Exhibit C.*

4

levels), use of a dangerous weapon (4 levels), and serious bodily injury (5 levels), the Base Offense Level would be 25.

### III. Victim-related adjustments (¶¶ 24, 30)

The probation officer has improperly assigned a 6-level adjustment for official victim, under § 3A1.2(b). Section 3A1.2(b) applies only if a Chapter Two, Part A cross reference occurs. A 3-level adjustment for official victim is appropriate here, but not the 6-level adjustment for application of a Chapter Two guideline as discussed above.

### IV. Double counting (¶ 41)

"Impermissible double counting 'occurs where one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guidelines.'" *United States v. Speelman*, 431 F.3d 1226, 1233 (9th Cir. 2005) quoting *United States v. Reese*, 2 F.3d 870, 895 (9th Cir. 1993). "The Sentencing Commission plainly understands the concept of double counting, and expressly forbids it where it is not intended." *Reese*, F.3d at 894; *see also United States v. Williams*, 954 F.2d 204, 208 (4th Cir. 1992). For example, "the use of a single aspect of conduct both to determine the applicable offense guideline and to increase the base offense level mandated thereby will constitute impermissible double counting." *Speelman*, 431 F.3d at 1233.

Here, the probation officer has used the same conduct, *i.e.*, conviction under 18 U.S.C. § 842(p)(2), both to determine the base offense level, under U.S.S.G. § 2K1.3(a)(3), and to assess a four-level enhancement under § 2K1.3(b)(3)(A). This is impermissible double counting under clear Ninth Circuit precedent.

## V. Disproportionality of sentence

The Sentencing Reform Act (18 U.S.C. 3551 et. seq.) mandates that the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the Act]." 18 U.S.C. 3553(a). The purposes of sentencing set forth in the Sentencing Reform Act are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Title 18 U.S.C. § 3553(a)(2). The Court may not, however, impose "extreme sentences that are grossly disproportionate to the crime." *Graham v. Florida*, ––– U.S. ––––, 130 S.Ct. 2011, 2021 (2010). *See United States v. Williams*, 636 F.3d 1229 (9th Cir. 2011).

The Eighth Amendment declares that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. viii. The Supreme Court has stated that the "cruel and unusual punishments" clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed. *Solem v. Helm*, 463 U.S. 277 (1983). As summarized in *Graham v. Florida*, 130 S. Ct. 2011, 2022 (2010), a narrow rule for evaluating proportionality between a specific crime and punishment has emerged. This concept was established by the concurring opinion in *Harmelin v. Michigan*, 501 U.S. 957 (1991), a case without a majority and later affirmed by the plurality opinion in *Ewing v. California*, 538 U.S. 11 (2003). This proportionality evaluation procedure underpins

the principle that while the Eighth Amendment does not require strict proportionality between the crime and the sentence, it does forbid extreme sentences that are grossly disproportionate to the crime. *Id.*

The narrow proportionality rule in *Harmelin* requires that when evaluating Eighth Amendment proportionality challenges, a court must first compare the gravity of the offense with the harshness of the penalty. *Graham*, 130 S. Ct. at 2022. The first proportionality factor (gravity of offense vs. penalty harshness) acts a gateway or threshold. A court must initially focus, therefore, on whether the defendant's sentence reflects a significant imbalance between the crime committed and the sentence imposed. *Ewing*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring)). The Ninth Circuit adheres to this procedure. *United States v. Meiners*, 485 F.3d 1211, 1213 (9th Cir. 2007). In weighing the gravity of the offense and the relative harshness of the penalty, courts should consider the offense of conviction as well as the harm caused to the victims or society and the culpability of the offender. *Solem*, 463 U.S. at 292-93.

After meeting the threshold proportionality test, the court must then compare the defendant's sentence and the sentences received by other offenders in the same jurisdiction, and the sentences imposed for the same crime in other jurisdictions. *Graham*, 130 S.Ct. at 2022.

An extensive review of published and unpublished cases involving convictions under 18 U.S.C. §§844(I and n), and the sentencing orders therein, demonstrates the disproportionality of the proposed sentence in this case. (*See attached Exhibit D.*) Of the four cases involving injury or death, a life sentence was imposed only where multiple deaths resulted.

1. *United States v. Gibney*, 519 F.3d 301 (6th Cir. 2008). Defendant pled guilty to nine[2] counts of violating 18 U.S.C. §§ 844(I), (n), and 876. He was sentenced to 60 months, 63 months, and the mandatory minimum of 84 months (based on injury to a firefighter), all sentences to run concurrently.

2. *United States v. Toney*, 277 Fed.Appx. 637 (7th Cir. 2008). Defendant sentenced to 300 months in prison for violating 18 U.S.C. § 844(n, d) in the mail bombing murder of her husband with injury to another, after her original life sentence was reversed on appeal.

3. *United States v. Ghailani,* 761 F.Supp.2d 167 (S.D.N.Y. 2011). Defendant was sentenced to life in prison for his conviction under 18 U.S.C. § 844(n), arising out of his involvement in the terrorist bombings of the United States embassies in Kenya and Tanzania in which 224 people were killed. *See also U.S. v. Laden,* 92 F.Supp.2d 189 (S.D.N.Y. 2000).

4. *In re. Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93 (2d Cir. 2008), the defendants were sentenced to life in prison for convicted under 18 U.S.C. §§ 844(f, n), 924(c), 930(c), 1114, 1116, 1117, 2332(b), 2332a(a)(1), relating to the August 7, 1998 bombings of the American Embassies in Nairobi, Kenya and Dar es Salaam, Tanzania in which more than 200 people were killed.

In the 16 cases not involving injury or death, the sentences were substantially less and all charges ran concurrently.

1. *United States v. Mandhai*, 179 Fed. Appx. 576 (11th Cir., 2006). Defendant entered several "conspiracies" led by two FBI informants. Although varying amounts of planning activities occurred, the "conspiracies" did not proceed beyond the talking stage. Mandhai was sentenced to 140 months in prison after he pled guilty to conspiracy to destroy buildings affecting interstate commerce, pursuant to 18 U.S.C. § 844(n). On re-sentencing, defendant was sentenced to 168 months in prison.

---

[2] The 11-count indictment alleged violations of the following: (a) 18 U.S.C. § 844(n), conspiring to maliciously damage, by means of fire, a building used in interstate commerce and in activities affecting interstate commerce; (b) 18 U.S.C. §§ 844(i) and 2, maliciously damaging, by means of fire, a building used in interstate commerce; (c) 18 U.S.C. §§ 841(i) and 2, maliciously damaging, by means of fire, a building used in interstate commerce, resulting in personal injury to a public safety officer performing duties as a direct and proximate result of defendant's conduct; (d) 18 U.S.C. § 876(c), delivering a threatening communication to another by means of the United States Postal Service; (e) 18 U.S.C. § 1117, conspiracy to murder a United States judge in retaliation for the performance of his official duties; and (f) 18 U.S.C. § 1512(b), conspiracy to influence, obstruct, and impede the due administration of justice, in connection with the trial of a criminal case, by threatening to murder potential government witnesses.

2. *United States v. Quesada-Ramos*, 429 Fed. Appx. 909 (11th Cir. 2011). Defendant was sentenced to <u>115 months</u> in prison for his convictions of conspiring to destroy, and destroying by fire a building used in interstate commerce, under 18 U.S.C. § 844(n, I), 2, to run <u>concurrently</u>.

3. *United States v. Cottrell*, 333 Fed. Appx. 213 (9th Cir. 2009). Defendant was sentenced to <u>100 months</u> in prison for seven counts of arson and conspiracy to commit arson in violation of 18 U.S.C. § 844(n, I), to run <u>concurrently</u>. The arson convictions were overturned for reasons relating to the improper exclusion of expert testimony at trial.

4. *United States v. White*, 74 Fed. Appx. 296 (4th Cir. 2003). Defendant was sentenced to <u>78 months</u> in prison for conspiracy to commit arson and aiding & abetting, in violation of 18 U.S.C. § 844(n, I), 2, to run <u>concurrently</u>, for trying to burn a funeral home in revenge for what he perceived as the mishandling of the remains of a recently deceased relative.

5. *United States v. Smith*, 406 Fed.Appx. 453 (11th Cir, 2010). Defendant was sentenced to <u>60 months</u> in prison for conspiring to commit arson, in violation of 18 U.S.C. § 844(n).

6. *Wade v. Fleming*, 2002 WL 32332223 (N.D. Tex 2002). Defendant was sentenced to <u>84 months</u> in prison for multiple counts of arson and conspiracy to commit arson in violation of 18 U.S.C. §§ 844(n, I), to run <u>concurrently</u>.

7. *United States v. Mason*, 410 Fed. Appx. 881 (6th Cir. 2010). Defendant, a member of the Earth Liberation Front, pleaded guilty to aggravated arson, arson, and conspiracy to commit arson in violation of 18 U.S.C. § 18 U.S.C. §§ 844(f)(1), (n), (I). As part of her plea agreement, she admitted her role in several arsons, her participation in twelve prior acts of property destruction on behalf of ELF, the commission of between $2.5 and $7 million worth of property destruction on behalf of ELF, and agreed that the offenses involved, or were intended to promote, a "federal crime of terrorism" as defined in 18 U.S.C. § 2332b(g)(5). Based on her extensive admissions in the plea agreement, the court imposed a modified terrorism adjustment and sentenced her to <u>concurrent</u> sentences of 240 months' imprisonment on the conspiracy count, <u>262 months'</u> imprisonment on the aggravated arson count, and 180 months' imprisonment on the arson count.

8. *United States v. Beilharz*, 378 Fed.Appx. 363 (4th Cir. 2010). Defendant was sentenced to <u>92 months</u> in prison for convictions of conspiracy to commit arson, mail fraud, and money laundering, in violation of 18 U.S.C. §§ 844(n), 1341, 1957, to run <u>concurrently</u>.

9. *United States v. Walsh*, 228 Fed. Appx. 295 (4th Cir. 2007). Defendant sentenced to concurrent sentences of 235 months in prison on 36 counts of arson, conspiracy to commit arson, and aiding & abetting, in violation of 18 U.S.C. § 844(n, I), and 2, relating to his arson of a partially-completed housing development.

10. *United States v. McDavid*, 396 Fed.Appx. 365 (9th Cir. 2010). Defendant sentenced to 235 months in prison for conspiring to damage or destroy property by fire and an explosive under 18 U.S.C. section 844(n), related to his involvement with the Earth Liberation Front.

11. *United States v. Denmark,* 2009 WL 2426055 (E.D.Pa. 2009). Defendant sentenced to two 93-month and one 60-month concurrent prison sentences for arson, conspiracy to commit arson and making false statements in bankruptcy in violation of 18 U.S.C. §§ 844(n, I) and 152(3), relating to his plan to burn down his North Philadelphia nightclub, his participation in the arson, and his false statements in bankruptcy related to that arson.

12. *United States v. Eatmon*, 47 Fed.Appx. 259 (4th Cir. 2002). Defendant sentenced to eleven concurrent 87-month prison sentences for arson and conspiracy to commit arson, mail fraud, bank fraud, and wire fraud, in violation of 18 U.S.C. §§ 844(I), 844(n), 1341, 1344(1), and 1343.

13. *United States v. Farish,* 535 F.3d 815 (8th Cir. 2008). Defendant sentenced to 108 months in prison for one count of arson, and 60 months in prison for false statements to run concurrently, for convictions arising under 18 U.S.C. §§ 844(I), (n) and 2; and 18 U.S.C. § 1001.

14. *United States v. Graziano*, 616 F.Supp.2d 350 (E.D.N.Y. 2008). Defendant sentenced to two 180-month prison sentences for arson and conspiracy to commit arson, in violation of Title 18, United States Code, Section 844(n, I), to run concurrently.

15. *United States v. Leary*, 378 F.Supp.2d 482 (D.Del. 2005). Defendant sentenced to three 60 month prison sentences for conspiracy, arson, and mail fraud, in violation of 18 U.S.C. §§ 371 and 844(n, I), 2 and 1341, to run concurrently.

16. *United States v. Karlic,* 997 F.2d 564 (9th Cir. 1993). Defendant sentenced to 132 months in prison after pleading guilty to nine counts of maliciously damaging and destroying a building and personal property used in an activity affecting interstate commerce, entering an FDIC-insured bank with intent to commit larceny, and using an explosive to commit a felony in violation of §§ 844(I), 2113(a), 844(h).

The instant case involved non-life threatening injuries and no death. As reflected by the cases cited and discussed above, a 100-year (life) sentence is grossly disproportionate.

10

In *United States v. Angelos*, the trial court wrestled with a grossly inequitable sentence as mandated by the application of 18 USC 924(c). 345 F.Supp.2d 1227 (D.Utah 2004). The defendant, who had no criminal history, was convicted of drug dealing and possession of a firearm and faced a mandatory sentence of 55 years for the 924(c) convictions consecutive to 6-1/2 years for the drug dealing convictions. After evaluating the various constitutional challenges raised by the defense, and discussing the vastly disproportionalities of the requested sentence as compared to sentences imposed for murder convictions, the Court reluctantly concluded that it could not ignore the statutory imperatives of 924(c). To somewhat ameliorate the inequities the Court imposed a sentence of 55 years plus one day. Here, two of the convictions require a mandatory minimum seven-year sentence but <u>not</u> consecutive sentences. This mandatory minimum reflects Congress' determination that convictions under 18 U.S.C. 844(I), (n) must be punished more harshly when injury results. There is no statutory directive of consecutive sentences. And while the probation officer argues the potential for additional injury and even death, the Court must ask itself whether there is a rational basis for punishing the potential violence more harshly than the actual violence 345 F.Supp.2d at 1244.

The probation officer also cites USSG § 5G1.2(b), (d), arguing that the Guidelines require imposition of the statutory maximum sentence(s) where the Guideline range exceeds that allowed by statute. Here, however, the statute mandates a specific range based on the presence of a particular factor (i.e. 7-40 years for injury). As argued by the probation officer, the Guidelines have no relation to -- and actually seem to counteract -- the intent of Congress in the governing statutes. Recent authority makes it plain that district courts should feel especially free to reject Guidelines that are

unconnected to any clear intent of Congress. *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011). This is such a case.

As applied by the probation officer, the Guidelines result in a completely disproportionate sentence, have no connection to the clear intent of Congress, and far exceed any sentence imposed under the statutes charged in this case. There is no rational purpose to punish Dennis Mahon with a sentence that exceeds that which is imposed in murder cases, and equals the sentences imposed in terrorism cases where hundreds of people have been killed.

Respectfully submitted: May 1, 2012.

JON M. SANDS
Federal Public Defender


  *s/Deborah L. Williams*
DEBORAH L. WILLIAMS
MILAGROS A. CISNEROS
Asst. Federal Public Defenders

Copy of the foregoing transmitted by ECF for filing this 1st day of May, 2012, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

MICHAEL MORRISSEY
JOHN BOYLE
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central, Suite 1200
Phoenix, Arizona  85004-4408

Copy of the foregoing emailed/mailed to:

LISA MILLER
U.S. Probation Office

DENNIS MAHON
Defendant

 s/ *S. B.*
S. B.

13